OPINION OF THE COURT
Martha K. Zelman, J.
Plaintiff, Mr. Alfred J. Hasenbein, brings this motion by way of an order to show cause requesting a preliminary injunction pursuant to CPLR 6301, which would restrain the defendants from removing him from the board of directors of the Cross County Savings and Loan Association (Cross County). The defendants, Muriel Siebert as Superintendent of Banks, the New York State Banking Board and the Banking Department of the State of New York, have cross-moved for an order dismissing the complaint pursuant to CPLR 3211 (subd a, par [7]), in that it fails to state a cause of *95 action. In reply to the cross motion, the plaintiff then moved for summary judgment declaring the statute in question unconstitutional, pursuant to CPLR 3211 (subd [c]).
Thus, what confronts this court is a number of different procedural vehicles which all seek a determination as to the same issue of law; and that is whether or not section 397 (subd 2, par [b], cl [3]) of the Banking Law is unconstitutional. Upon hearing oral argument in this matter, it was made known to the court that Mr. Hasenbein had already been removed. In the interests of justice, both sides agreed that the hearing would be treated as a trial on the merits as to the issue of law at hand. Also, both sides have submitted written briefs arguing their respective positions as to the question of law involved. Therefore, pursuant to the inherent powers of the court and CPLR 3017 and in order to achieve a speedy result and avoid prejudicial delay, this court will make a determination in the nature of a declaratory judgment so as to properly define the rights and duties of the respective parties.
FACTS
The facts in the matter are relatively simple and undisputed. In October of 1979, Mr. Hasenbein was elected as a director of the Cross County Savings and Loan Association, which is a banking organization organized and existing pursuant to the Banking Law of the State of New York and consisting of three branch offices located within the City of New York. He served in that capacity until April of 1980 when he was removed by the board of directors “under protest” pursuant to a directive issued by the Banking Department. The directive stated that the plaintiff was ineligible for election as a board member because of the provisions of section 397 (subd 2, par [b], cl [3]) of the Banking Law. Mr. Hasenbein is married to the niece of a Mr. Michael Cousin who is also a member of the board of directors of Cross County. It is the plaintiff’s contention that section 397 (subd 2, par [b], cl [3]) of the Banking Law, which is a nepotism statute, is unconstitutional as it is arbitrary, irrational and overbroad and, therefore, is an unreasonable exercise of the State’s police powers which violate plaintiff’s *96 due process and equal protection rights. It is the defendants’ position that the challenged section is rationally related to a legitimate State interest and is reasonable and, therefore, suffers no constitutional infirmities.
APPLICABLE LAW AND CONCLUSION BY THE COURT
Section 397 (subd 2, par [b], cl [3]) of the Banking Law states as follows:
“If: (a) Such person’s spouse is a director or one of the five highest paid salaried officers of the association; (b) Such person or such person’s spouse is the grandparent, parent, child, grandchild, brother, sister, aunt, uncle, nephew or niece of a director or one of the five highest paid salaried officers of the association; or (c) A director or one of the five highest paid salaried officers of the association is the spouse of such person’s child, grandchild, brother or sister.
“No director in office on September first, nineteen hundred seventy-one shall be ineligible for the office of director by reason of the provisions of subparagraph three of paragraph (b) of this subdivision.”
The section was passed with the support of the Banking Department to. deal with the problem of nepotism which had resulted in significant adverse publicity to and criticism of the mutual savings industry. Nepotism is defined in Black’s Law Dictionary (4th ed, p 1191) as the “Bestowal of patronage by public officers in appointing others to positions by reason of blood or marital relationship to appointing authority.” The court in its research has compared the challenged section with other “nepotism” statutes both on the State and Federal level. It is interesting to note that were Cross County a Federal banking institution, Mr. Hasenbein would still be an active member of the board. This result is gathered from a reading of the regulations promulgated by the Federal Home Loan Banking Board which . incidentally has.concurrent jurisdiction over Cross County. In those regulations, family is defined as follows: “by the full or half blood or by adoption: (a) Such person’s spouse, father, mother, children, brothers, sisters and grandchildren; (b) The father, mother, brothers and sisters of such person’s spouse; and (c) The spouse of a child, brother or *97 sister of such person.” (Insurance Regulation, § 1077 [g], 12 CFR 561.30.)
In addition, no more than two such immediate family members can sit on the same board together. In Mr. Hasenbein’s case, both he, his wife and Mr. Cousin would be able to sit on the same board under these Federal regulations. (See Insurance Regulation, § 1144 and 12 CFR 563.33.)
In section 3110 of title 5 of the United States Code, which attempts to eliminate nepotism among the staff members of Congress, the definition of family is also more narrow than that of the New York Banking Law. It does not define the spouse of a niece as family. Also, the statutes regulating nepotism in judicially appointed positions does not extend the concept of family as far as the challenged section. (See Fed Bankruptcy Rule 505 [in US Code, tit 11, Appendix] ; US Code, tit 28, § 458; US Code, tit 18, § 1910; US Code, tit 11, former § 76a.) These laws define family as those persons related by affinity or consanguinity.
The defendants argue that the fact that one governmental unit may take a different approach to solving a problem than other governmental units have taken, does not suffice to render a statute so unreasonable as to offend due process and exceed the police power.
They also say that one advantage of our Federal system of government is that it provides room for experimentation in solutions to social and economic problems; citing Ferguson v Skrupa (372 US 726). However, when the experimentation begins to infringe on fundamental rights and privileges which are constitutionally protected, can it be allowed to continue?
The legitimate State interest which is sought to be regulated by the challenged section is obviously the banking industry. The business of banking is one affected with the public interest and therefore within the police powers and subject to reasonable regulation by the State. (Rothschild v Manufacturers Trust Co., 279 NY 355; Shepherd v Mount Vernon Trust Co., 269 NY 234.) When a State exercises its police power through a legislative enactment, there must be a rational basis between the enactment of the statute *98 and the goals sought to be achieved. If the means created by the Legislature to meet their goals are arbitrary or unreasonable, the statute cannot be upheld when constitutional rights are violated. In Loving v Virginia (388 US 1, 12) the Supreme Court said that “The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.” That court also held in Zablocki v Redhail (434 US 374, 388), “When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld”. This court could offer a solution with tongue in cheek that Mr. Hasenbein divorce his wife and subsequently live with her and thereby be eligible to sit on the board of directors.
It is also well settled that the right to practice a profession free from unreasonable governmental interference is protected by the Constitution of the United States (Greene v McElroy, 360 US 474, 492). Of course, the pivotal word in the above principle of law is unreasonable. The Appellate Division, Second Department, in People v Dobbs Ferry Med. Pavillion (40 AD2d 324, affd 33 NY2d 584) struck down sections 2801 and 2801-a of the Public Health Law as being so vague, broad and oversweeping so as to prevent the appellant doctors from conducting their clinic. While that case can be distinguished from the one at bar, the point is the same. Here we have a statute that is too narrow and has gone too far, to the point where the governmental interference becomes unreasonable. The goal sought to be achieved by the Legislature is to eliminate nepotism and with that this court readily agrees. However, the eradication of such an evil can be accomplished with a less restrictive statute. In Shelton v Tucker (364 US 479, 488) the Supreme Court stated that: “this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less dramatic means for achieving the same basic purpose.”
This court finds that plaintiff’s rights to due process and *99 equal protection of the law have been violated and therefore declares that the statute as it applies to plaintiff is unconstitutional. Mr. Hasenbein should be reinstated to the board as soon as possible.